so we'll hear the next case of AmGuard Insurance Company versus SG Patel and Sons and Ms. Molachnick we'll hear from you first. May it please the court Crystal Molachnick, counsel for appellant AmGuard Insurance Company. There are two issues before the court in this action for interpleader and the nature of interpleader and for declaratory judgment. First, whether the district court erred as a matter of law by granting the motion to dismiss of certain defendants and not considering the citizenship of AmGuard, the stakeholder who had pursued a complaint in the nature of interpleader in determining whether minimal diversity had been satisfied for purposes of 28 USC 1335. Let me ask you just some foundational fact in this. Did the court sua sponte just dismiss the case for lack of diversity? There was a motion to dismiss that was filed, your honor. The court granted the motion but did so on grounds that were not raised in the motion. So what was the court's specific conclusion? The court concluded it did not have jurisdiction because there was not minimal diversity present because it could not consider the citizenship of AmGuard, the plaintiff and stakeholder. All right and so and that was based on the 1335 where there has to be minimal diversity among the claimants. Yes, your honor. And how did the court address the 1332? The court did not address 1332 at all in the decision. The court recognized that it had the ability to convert the statutory interpleader to one as rule interpleader under rule 22 but it did not do so and it did not address the although it had jurisdiction to do so under 1332 and 2201. That being the case ma'am, your last statement, how do we have jurisdiction then if she didn't rule on the declaratory judgment issue? Well the court dismissed the complaint outright finding it did not have jurisdiction under the interpleader statute for 1335 but did not address any of the other components of the complaint. Did anybody argue the distinction between an interpleader and a case in the nature of an interpleader? This specific issue was was raised at at argument but the court did not disclose that argument that it had questions as to its jurisdiction and as to whether it could consider the citizenship of AmGuard. In making its ruling and issuing its order it did note in a footnote that when there is a nature of interpleader that the stakeholder's citizenship could be considered but held that AmGuard had not made such a claim despite the clear statements in it despite the clear allegations in its complaint on a specific count for complaint in the nature of interpleader and count two of its complaint. And how did the court handle the declaratory judgment claim? It did not it simply held it did not subject matter jurisdiction under 1335 and did not address any of the issues under 1332. All right. So our first issue is whether the the citizenship of AmGuard should have been considered under 1335 for purposes of statutory interpleader and secondly our alternative issue which the court has already touched on whether the district court abused its discretion when it dismissed the case entirely instead of converting it to rule interpleader when it had jurisdiction to do so or to entertain the complaint in the declaratory judgment or to allow AmGuard an opportunity to address these issues or amend its complaint. Turning to the first issue, dismissal was not as to vest the court with jurisdiction under 28 USC 1335. The interpleader statute gives the district courts original jurisdiction of interpleader actions or in the nature of interpleader which is present when the stakeholder themselves has an interest in the stake at issue before the court. AmGuard here had pled its own interest in the stake in the issues before the court due to the dispute over the limits of liability and the other issues that had been presented and therefore its citizenship should have been considered as a claimant as to give rise to minimal diversity and vest jurisdiction before the district court. This is the decision that's been followed by the Fifth District Court raised sua sponte as the sole argument by the defendants in moving Smith was an issue as to ripeness. The defendants as they have argued here argued that because they had withdrawn their Tiger River time-sensitive demand the issues before the court were not ripe. Well the court didn't rule on that. Correct your honor. Okay can I ask you counsel about the Roche case where that's the American family versus Roche where the court analyzes the question whether an insurance company is an interested stakeholder separately from whether they are a claimant and and concludes that yes they could be an interested stakeholder because they you know if the company is disputing liability to one of the are disputing that one of the claimants is entitled to to the insurance proceeds but but concluded that in a case like this the insurer is not a claimant because they're not claiming a piece of the pie. They've put their own money in reserve and then are you know in that since they're only claiming that they want their own money back that in that in that sense the interested stakeholder is different from the claimant for purposes of 1335. Is that what's the you I take it you disagree with that analysis but where's the flaw in that? Yes your honor we do disagree with the Roche analysis. I believe the court erred in Roche as it essentially rewrote the statute. The statute speaks in terms of claimants as to all claimants to the funds and the stake at issue. The Roche court looked at claimants in considering who was making a claim under the policy and and focused in on on using that term to define claimant when courts interpreting the including the stakeholder who has an interest in the stake is considered a claimant. I think that the Roche decision was also contrary to what the Supreme Court had recognized in Tashire that in a nature of interpleader case that the the insurance company was a claimant entitled to assert their own interest in the stake. Tashire case did not address the issue before the court on the diversity and whether it's its citizenship could be considered but I think that the Roche court went contrary to the plain language of 1335 in making its determination. Well the argument you also have the argument I suppose that a stakeholder by definition is somebody that's just a neutral and it holds the money which is a pure interpleader and in that case you have to have diversity among the claimants but when the stakeholder challenges the money and doesn't want to give it up in the nature of an interpleader it's no longer just a stakeholder it's also a claimant. I think that's your argument isn't it? Yes it is your honor. That said much more artfully than I have this morning but that that's exactly exactly our position when you have an interested plaintiff who is more than just a disinterested stakeholder who is interpleading their money into court there they thereby become a claimant whose citizenship can be considered by the court in determining whether there is minimal diversity amongst the claimant. The statute does not speak in terms of diversity minimal diversity just amongst the defendants uses the term claimant and as a plaintiff pursuing the interpleader they are therefore a claimant as well. Why is federal why is the federal forum necessary in a in an instance like that? If the only diverse claimant is the interested stakeholder then it would seem that you could have service in a state that you know and use state interpleader with all the other claimants are in you know citizens of the same state. Why is the federal forum necessary? The federal forum and the protections afforded by this the interpleader statute give you additional protections that the state interpleader do not have. You have the the injunction statute that attends to the statutory interpleader in federal court and it it allows you to join everyone in one forum where you may not have appropriate venue in the state court. But here you would right because the other the claimants are all citizens of the same state and they're all in the same area. Yes, you would your honor. Anything further? I just asked you our second issue. Alternatively, if if if Amgard citizenship should not have been considered, then the district court abused its discretion, not at least convert converting this case to one under rule interpleader under Rule 22. As we do have complete why you have to convert rules aren't don't have to be invoked in complaints. Rules guide a process. And it seems to me that your argument has to be that you brought a section 1332 declaratory judgment action that has been totally ignored. And court at least has jurisdiction under over the declaratory judgment. And in that context, it seems to me that once it 500,000 or three million, uh, then it can require the defendants interplead among themselves under Rule 22. But it seems to me there's no invocation or conversion. There's no cause of action under 30 Rule 22. It's just a rule procedural rule. Yes, your honor. All right, we'll hear from, uh, Mr Bamberg. May it please the court. Thank you, your honors. Um, you know, we're of the position that at the end of the day, this this case is this appeal is kind of like some country mustard greens and really boils down to nothing. Um, we understand Amgard's position. Um, but I'll let me ask you this. Just a fundamental question. Uh, a party comes into federal court alleging diversity jurisdiction in search of declaratory judgment action, and the court throws it out because, uh, part of the action is an interpleader, and the court concludes there's no federal jurisdiction under the interpleader. It's incomprehensible. I mean, it just threw the case out. Well, your your honor, I think a big point here. Um, and if we look at the procedure of this this case, there was a demand made by the parties that doesn't have a thing that doesn't make the controversy go away. The court didn't rely on that. The court basically said that there was no diversity, uh, under 13 35 and nothing else and threw the whole case out. Correct. Well, well, no other ruling made in part, your honor in the in Amgard never a list that they were a stakeholder at that stage. This doesn't matter if they're a stakeholder. They're neutral. It's pure interpleader. And you have to under 13 35. You have to have diversity among the claimants, minimal diversity among the claimants. But in the nature of an interpleader, it's a little bit different. And, uh, but that's not what the court relied on. And the insurance company came in and alleged 13 32 jurisdiction and the whole case is before the court, at least under that there is diversity between Amgard and the defendants, isn't there? Um, I don't believe so, your honor. I do not. Why don't you believe so? Where's Amgard? Principal place of business. Amgard's principal place of businesses in Pennsylvania. And where the defendants are residences. Oh, everybody else as it pertains to the case of residents of South Carolina. And is a mountain controversy over the amount 75,000. Well, there's not an controversy. There's a dispute between $3 million and 500,000. Well, that's that's part of the issue, your honor. And this came up in the in the lower courts is at one point there was a dispute. There was a question about how much money was there of Amgard took position that their policy was $500,000. Everyone said, Okay, let me ask you. You withdrew that letter. If you've withdrawn that letter, can we take it that with the withdrawal of that letter, you are no longer making a claim against the insurance company for any amounts? No, we have agreed. Let me just answer my question. Yes, sir. With the withdrawal of the claim, can the insurance company conclude that you are no longer going to make a claim against the insurance company for any liability? Well, we're making a claim against the insured, and I understand but you can go against the insurance company. You can. Ultimately, you can collect against the insurance company once you get a judgment. Correct. And they have my question to you're not answering my question. Is the withdrawal of your letter a withdrawal of any claim that you have against the insurance company? No, your honor. I didn't think so. And they didn't think so. That's why they came in for declaratory judgment. It doesn't depend on your letter. It depends on whether there's a controversy. And the controversy is that they are exposed to payment for this accident. And you're gonna ultimately try to get that money from the insurance company, regardless of what route you take. Your honor. Respectfully, I agree with you in part and I disagree in part. Um, there is no dispute over the amount of insurance. At this point, there's no controversy there. They have said there's 500,000 on our side. We have said, Okay, that's fine. We still would like to go forward and try these cases. Eso. There's no controversy over the amount, and that is a big, a big different differentiating factor here is what started as a dispute, so to speak, about how much insurance is there. That is what formed the basis for interpleader. That is what formed the basis for a declaratory judgment action to seek the federal court. Hey, there's a disagreement as to how much insurance is available under our policy. We're asking the court to answer that question. Well, that went away when the decision was made. Okay, there's 500,000. That is perfectly fine. At that point, there was no controversy. But I would like to jump back with regards to the subject matter jurisdiction question here, and Amgar has already acknowledged that the district court can certainly consider issues of subject matter jurisdiction. Suis Ponte. They have admitted that they have only on what this appeal represents is effectively Amgar is upset, for lack of better words, that the district court used their ability to consider certain things. Suis Ponte in a way that maybe didn't go in their favor while at the same time saying the court air by not using their discretion. Suis Ponte to do something that they wanted. Um, and that's a big problem here. The court noted a couple of good things. I'm not gonna rehash all that. But at the end of the day, um, you know, we think the federal court got it correct. Uh, there is no there's no controversy. That is why rule on controversy. The court ruled on diversity. That's all it ruled on. It said there was no diversity there under 13 35. Therefore, we dismiss. Isn't that true? No, that is true. That is true. They said they did not have the court does not have subject matter jurisdiction, and the court does not have subject matter jurisdiction based on the specific facts of the case based on the stance of the insurance company. As long as the interested party and claimants there, there's no controversy. Uh, and guard was not a stakeholder. Uh, and more importantly, and I understood the point that was raised earlier about Rule 22 on whether you must plead it, whether or not you don't have to because it's a rule on. We understand that. But at the end of the day, and guard was the and I believe the I believe the federal court specifically pointed out, um, that am gaurd expressly declined the application of Rule 22 interpleader. And therefore, the court use this discretion not to switch this case from a fact or interpleader to a move 22 interpleader. And those are two different things. Um, when you look at whether it's a rule, it just applies. That's one thing. But as the court noted, am gaurd expressly declined the application of Rule 22 and decided to go with statute. And under the statutory interpleader, the court in its discretion looked at all of the facts and circumstances and reached the opinion that it did not have subject matter jurisdiction. And we agree with him. Mr Bamberg, I'm having a little trouble following your argument. You said the $500,000 is fine, but we're gonna go on. Well, it's a practical matter. The insurance company's not gonna turn that money loose unless your client signs a release. Uh, and so what is there to go? Go further with. All right, Your Honor. A great question. And to answer that, it entails discussing a little bit of facts of the underlying case that let us here. This is a case about a those kids drank the alcohol. There was a very, very bad wreck in Bamberg County, where one of the kids died. One kid effectively became brain dead, broke almost every bone in their body, incurred millions in medical bills. One kid broke their neck. One of the kids who was the youngest for the next to the youngest of the group at 15 is now facing felony DUI charges. Eso at this point, this case is not about money into the parents who buried their child. The case is not about money. Oh, this is about these people having their day in court. This is about a Bamberg County in a formal county, South Carolina jury sending a message to two businesses that the lives of Children where we live is more important than money. That's why we say the $500,000 is what it is. At the end of the day, when when verdicts are had, um, all of the plaintiffs in underlying cases on the same page. Uh, there are no bickering between the group. If there's 500,000 and and guard. Okay, here you go. Here's 500,000. We'll handle that at the end of the day. Uh, the verdicts are going to be important here, and that is for a big, a big part of the reason why we made the decision and our clients made the decision. We're not getting in some legal fight over how much insurance covered this particular gas station had because this isn't the first time the underlying store immediately prior to this got busted by the police. It's led for selling to underage kids. They got a second chance, and they never fixed the problem. So there's a major public policy issue, uh, that that's at the heart of this case here. Um, the state of South Carolina, um, through the through the General Assembly. It's such a big deal that the state began mandating with the liability to establishments that sell alcohol by the drink. Let me ask you this. If you're interested in pursuing that case for, uh, much larger than the 500,000 verdict, much larger. Yes, Your Honor. Are you willing to release the insurance company from all liability upon payment of the 500,000? Um, I mean, we have already included in our brief that we're not contesting their assertion. I don't like you didn't hear my question. Uh, my question was if they paid you 500,000 now, which you argue would only be part of the damages because you're arguing the damage is a much larger. Uh, would you release the insurance company from all liability? Um, that I mean, that's something that we could discuss. Um, if it's proffered by and off. But at this point in time, um, rather than take that route and discuss that we're here on creating the actual controversy that's creating the right for Amgard to try to protect itself with a declaratory judgment. I mean, there's potential for excess claims, bad faith claims and all kinds of things. And they want to have their liability limited to the insurance policy. And that's what they're pursuing. You say it's unnecessary because you have no dispute. 500,000 is all that's there. You want to have a public statement on a big verdict? Well, if you want to do that, the question then is, why don't you let Amgard out for the 500,000 and give them a week? We attempted, Your Honor. We attempted that. We said I'm asking you now forget the past. Yes, Your Honor. The question is, the question is under your argument. There's no controversy now, and I'm suggesting there is a controversy unless you're now for 500,000. Well, that that, Your Honor, is part of the issue is, uh, they're at present. There is no controversy now in the way you answer my question, and then I can decide. We can decide whether there's a controversy. But if you say there's you're unwilling to let the insurance company go because potentially you may want to make some other argument as to why they owe more than 500,000, then there's a controversy. So the question is, if you want to demonstrate your point that there's no controversy, then you should be willing to accept the 500,000 and give them a full release. And Your Honor, I understand. I promise you I'm not. I'm not ducking and dodging question here. Um, we already expressed to Amgar before this appeal that we're fine with the 500 that they could go ahead and tender the 500 and let us move forward and get our party. So I mean, we're not creating a controversy in that regard. If they were toe would put that money up and it's held in trust until all these things were done. That's fine. They didn't want to help. They don't want to put it in trust. They want to just pay it to you. Well, that's part of the damages for the accident, and you can do for the remaining part, but you have to release them from all further liability. And you're saying you're not willing to do that. No, no, we we'd be willing to do that. That's not a problem. And when I say put it in trust, I mean in the trust of the lawyers, not like Amgar go hold it somewhere, pay it to plaintiff's counsel. We'll let it sit or will divvy it up however we want to do. And Amgar just move out the way, defend their person if that's what they're gonna do and let us move forward. And we'll worry about collecting the rest. Um, through other means. Unless there are further questions, your honor, we don't have anything else to add. Okay, thank you. Uh, there's a lot of luck. Do you have a rebuttal? Just a couple of points, your honor on rebuttal. Um, first, as to the there does remain a case or controversy here. Um, Patel, the insured has contested what the limits are. Um, their brief when they filed it specifically did not include Patel in their statement that they were willing to accept the 500,000 at oral argument or at the hearing on the motions before the district court. Um, the attorney for Patel contested what the limits were. So we still do have have a case or controversy here. Um, and as you've seen, let me ask you this. If after this argument, uh, Mr Bamberg came to you and said, send give me the 500,000. I'll give you a general release. Does that end the case? Um, only if are insured also signed on to that release. Why the insured? Well, the insurance coverage, right? Correct. No, I mean, as to am guard, we obviously owe duties to to defend and indemnify as as to our insured. And so our insured Patel would need to be a part of that, um, that release. All right, I've interfered enough. You guys know how to handle these things. I appreciate the court court guidance and inquiries. Um, but we have, as you noted, we have no ruling on on what the limits are. The statement that they were in agreement as the 500,000 came after the court had dismissed our complaint. Um, so we have no ruling on the record. We have no agreement on the record. We have no stipulation. Um, and we've had varying inconsistent positions from our insured as to what their position is as to what the limits are. Um, we did allege that we were a stakeholder with an interest in the state in the complaint. I count two of the complaint. Um, you know, that's that's it. That's the thing. I personally believe, and I don't speak for anybody else that caused the Roche court to get a little off rail because, as I understand the interpleader process in the nature of an interpleader, it's a two step process. The first one is to resolve the, uh, dispute that the insurance company has the claim that insurance company doesn't want it all or none of it to go. And so you have a resolution on that. And then the money is put in. If the insurance company loses any amount, then that money is put into the pot. And then the claimants interplead among themselves in the second stage. And if you had pure interpleader, there would be no dispute about the amount of the insurance company would put the policy limits into the court and leave and get an injunction. And that's pure interpleader. And there would then have to be diversity among the claimants. But your argument is in the nature of an employee, the stakeholder also is a claimant. Isn't that it? Yes, Your Honor. Absolutely. If the court has nothing further. Okay, thank you very much. Appreciate it. Our where we come down. It's unique in the country, I think, to Greek Council after each case. And thank you for your arguments. We can't do that now, but we do. Thank you for the arguments and hope you come back to our court again. And the next time you come, we will come down and shake your hands. I'm pretty sure. So thank you very much. We'll proceed on to the last case. Thank you, Your Honors.
judges: Paul V. Niemeyer, Henry F. Floyd, Allison J. Rushing